**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOYCE EVANS as independent administrator of the Estate of Davion Owens, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 22-CV-222 |
| | ) | Hon. Marvin E. Aspen |
| THOMAS DART, Sheriff of Cook County, et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Joyce Evans, as independent administrator of the estate of her son, Davion Owens, brings this action against Defendants Thomas Dart, Sheriff of Cook County; Cook County, Illinois; Sergeant Mulac; Sergeant Vega; Dr. Khan; Unknown Correctional Officer; and Unknown Doctor. (Complaint ("Compl.") (Dkt. No. 1) at 1–3.)[1] Evans alleges that Mulac, Vega, Dr. Khan, the Unknown Correctional Officer, and the Unknown Doctor violated the U.S. Constitution's Eighth and Fourteenth Amendments when they were deliberately indifferent to Owens's mental health needs, resulting in Owens's suicide. (*Id.* ¶¶ 34–78.) Evans also alleges that Dart and Cook County are liable for damages resulting from Owens's suicide because they have "a long pattern, practice, and custom of failing to implement policies and procedures to prevent suicide." (*Id.* ¶¶ 79–86.) Dart, Cook County, Mulac, and Vega have all moved to dismiss the Complaint for failure to state a claim upon which relief can be granted. (Defendants'

---

[1] For ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

Dart, Mulac, and Vega Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Individual Defs.' Mot. to Dismiss") (Dkt. No. 29); Defendant Cook County's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Cook County's Mot. to Dismiss") (Dkt. No. 32).) For the reasons set forth below, we grant Cook County's Motion and grant Individual Defendants' Motion in part and deny it in part.

## BACKGROUND

The following facts come from the Complaint, which we deem to be true for purposes of these motions. *See Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

**I.      Owens's Detention and Suicide**

On July 21, 2020, Owens became a pretrial detainee at the Cook County Department of Corrections ("CCDOC"). (Compl. ¶ 20.) At this time, Mulac was employed as a CCDOC correctional officer, and Vega was a supervising correctional officer at the CCDOC. (*Id*. ¶¶ 8, 9.)

On February 28, 2021, a correctional officer found Owens with a bedsheet around his neck, in an apparent attempt to kill himself. (*Id*. ¶ 21.) That officer reported the incident to Mulac and handcuffed Owens. (*Id*.) Owens was then taken for a medical and psychological evaluation at Cermak Health Services of Cook County ("Cermak"), a public entity that provides medical and mental health care to CCDOC detainees. (*Id*. ¶¶ 6, 21.)

Two days later, on March 2, officers were escorting Owens to Division 9 of the CCDOC when Owens attempted to run back to Cermak, stating "Man I can't go back to nine, I have enemies over there!" (*Id*. ¶ 22.) Correctional officers restrained Owens and took him back to

Cermak for a medical evaluation. (*Id.*) Dr. Khan, a doctor employed by Cermak, cleared Owens to return to the CCDOC. (*Id.* ¶¶ 10, 22.)

Later that day, Owens returned to Division 9. (*Id.* ¶ 23.) He "showed another inmate either a string or [a] sheet and said 'I'm gonna do it.'" (*Id.*) That inmate then asked for a sergeant to inform the sergeant that Owens intended to kill himself. (*Id.*) Nonetheless, Mulac, Vega, Khan, and an unknown doctor did not take any precautions to prevent Owens from harming himself. (*Id.* ¶ 24.) The following day, March 3, Owens committed suicide by hanging himself in his housing unit. (*Id.* ¶ 25.) Vega was the supervising officer in Division 9 that day. (*Id.* ¶¶ 26, 46.)

## II.    Cook County Policies and Practices Concerning Suicide Prevention

During the relevant period, Dart was the Sheriff of Cook County and oversaw the CCDOC. (*Id.* ¶ 5.) He "formulated[] and oversaw the implementation of polic[i]es, practices, regulations, protocol, and customs of the CCD[O]C." (*Id.*)

In 2008, the United States Department of Justice ("DOJ") issued a letter of finding to Dart and Cook County concerning conditions of confinement at the CCDOC (the "2008 DOJ Report"). (*Id.* ¶ 13.) The DOJ "concluded that the CCD[O]C's policies and procedures fell below acceptable standards in areas of suicide prevention, inmate housing, inmate supervision, staff training, and mental health evaluation and treatment, among other issues." (*Id.*) The DOJ also found that the CCDOC did not communicate adequately with Cermak concerning mental health treatment for inmates. (*Id.*)

The CCDOC and Cook County subsequently entered into an Agreed Order with the DOJ, in which the CCDOC "agreed to provide specialized training for suicide prevention" and to improve its monitoring of inmates exhibiting suicidal behavior. (*Id.* ¶ 14.) Among other things,

the CCDOC and Cook County agreed to maintain special cells for suicidal inmates that would
not have exposed bars. (*Id.* ¶ 19.)

## LEGAL STANDARD

When presented with a motion to dismiss for failure to state a claim, "we test the
sufficiency of the complaint, not the merits of the case." *Gociman v. Loyola Univ. of Chicago*,
41 F.4th 873, 885 (7th Cir. 2022); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th
Cir. 1996). In evaluating a motion to dismiss, courts "construe the complaint in the light most
favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all
possible inferences in her favor." *Tamayo*, 526 F.3d at 1081. Courts may grant motions to
dismiss under Rule 12(b)(6) only if a complaint lacks sufficient facts "to 'state a claim to relief
that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)
(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim
has facial plausibility when the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a
facially plausible complaint need not provide "detailed factual allegations," it must allege facts
sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127
S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. These
requirements ensure that a defendant receives "fair notice of what the . . . claim is and the
grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (internal quotation
marks and citations omitted).

4

## ANALYSIS

### I.  Whether Owens Has Plausibly Alleged *Monell* Claims Against Dart & Cook County

Both Dart and Cook County argue that we should dismiss the claims against them because the Complaint does not adequately allege *Monell* liability.[2]  (Individual Defs.' Mot. to Dismiss at 8–12; Cook County's Mot. to Dismiss at 3–7.)  "*Monell* liability" refers to the circumstances in which an entity can be liable for constitutional deprivations under 42 U.S.C. § 1983.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S. Ct. 2018, 2035–36 (1978); *Glisson v. Ind. Dep't of Corrs.*, 849 F.3d 372, 378 (7th Cir. 2017) (en banc).  An entity may be liable for a constitutional deprivation when: (1) it has "an express policy that causes a constitutional deprivation when enforced;" (2) it has "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice;" or (3) "a person with final policymaking authority" is responsible for the constitutional injury.  *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (internal quotation marks and citations omitted).

Evans pursues the second route, challenging Dart's and Cook County's "long pattern, practice, and custom of failing to implement policies and procedures to prevent suicide."  (*See* Compl. ¶ 84.)  According to Evans, Dart and Cook County failed to: (1) "protect inmates from serious risk of harm;" (2) "provide actively suicidal inmates with adequate housing;" (3) "provide inmates with adequate mental health care;" (4) "provide suicide prevention;" (5) "provide inmates with adequate supervision;" and (6) facilitate "adequate communication between CCDOC and Cermak Health services for mental health evaluations and treatments." (*Id*. ¶ 85.)  In support of these challenged patterns, practices, and customs, Evans points to the

---

[2] Because Evans is suing Dart in his official capacity (*see* Compl. ¶ 5), we consider the claim against him to be a claim against the government.  *See Dawson v. Dart*, Case No. 17-cv-00283, 2020 WL 1182659, at *3 (N.D. Ill. Mar. 12, 2020) ("When a plaintiff asserts an official capacity claim, the action is deemed to be a suit against the local government itself.")

2008 DOJ Report, as well as Owens's experiences at the CCDOC. Specifically, Evans alleges that even though correctional officers knew that Owens was suicidal, they failed to take certain steps to protect him, such as assigning him to the "psych tier" of the CCDOC. (*See, e.g., id.* ¶¶ 21–25, 41.)

Dart and Cook County argue that neither Owens's own experiences nor the 2008 DOJ Report adequately supports Evans's assertion of a widespread custom or practice that led to the constitutional deprivation at issue here. (Individual Defs.' Mot. to Dismiss at 8–12; Cook County's Mot. to Dismiss at 3–7.) "There is no bright-line rule defining a widespread custom or practice, but 'it is clear that a single incident—or even three incidents—do not suffice.'" *Arquero v. Dart*, Case No. 19-cv-1528, 2022 WL 595730, at *5 (N.D. Ill. Feb. 28, 2022) (quoting *Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014)). The incidents must also be sufficiently similar to the complained-of conduct to support the inference of a pattern. *See id.*; *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 657 (7th Cir. 2021) (noting that comparators must be sufficiently similar to show a widespread practice but need not be "perfect").

Here, Evans has not adequately alleged a widespread unlawful custom or practice that led to Owens's suicide. Owens's own experiences between February 28 and March 3 arguably provide some support for the allegation that the CCDOC's actions fell short in the areas of housing for suicidal inmates, mental health care, and suicide prevention and supervision, but Evans must allege more than "a single incident—or even three incidents" to maintain her claim. *See Wilson*, 742 F.3d at 780; *Arquero*, 2022 WL 595730, at *5. She has not done so.[3]

---

[3] Owens's own experiences provide no support for the alleged widespread practice of inadequate communication between CCDOC and Cermak. (*See generally* Compl.) Nor has Evans alleged a causal connection between that alleged practice and Owens's suicide. (*See generally id.*) For

Nor are Evans's allegations related to the 2008 DOJ Report an adequate stopgap. First, we cannot determine whether the practices described in the 2008 DOJ Report are sufficiently similar to the practices challenged here because the Complaint describes the Report's findings in only general terms. *See Howell*, 987 F.3d at 657 (to show a widespread practice, comparators must be sufficiently similar); *Jones v. Barber*, Case No. 17-cv-07879, 2020 WL 1433811, at *7 (N.D. Ill. Mar. 24, 2020) (DOJ report could not be used to show a widespread custom or practice where plaintiff discussed the report's findings in only general terms). For example, the Complaint alleges that the DOJ concluded that CCDOC's "policies and procedures fell below acceptable standards" with respect to "inmate housing," but it does not explain how "inmate housing" fell short. (*See* Compl. ¶ 13.) From this, it is difficult to discern whether the DOJ criticized the CCDOC for a practice that might be relevant here (e.g., housing suicidal inmates in cells with sheets and/or strings) or for an entirely different practice (e.g., housing inmates in unsanitary conditions).

Second, Evans has not plausibly alleged that the practices described in the 2008 DOJ Report persisted in 2021 when Defendants allegedly failed to protect him. The Report was issued more than a decade before Owens was detained, and Evans alleges that since the Report was issued, the CCDOC and Cook County have agreed to improve certain practices and procedures. (*See* Compl. ¶¶ 14–19.) Without additional facts, it is implausible that practices described in 2008 persisted into 2021. *See Jones*, 2020 WL 1433811, at *7 (plaintiff could not "rely on a report that predates his incarceration by nearly a decade to prop up his *Monell* claim,

---

this additional reason, the allegedly inadequate communication between the CCDOC and Cermak cannot be the basis for Evans's *Monell* claims. *See Thomas v. Cook Cnty. Sheriff's Dep't.*, 604 F.3d 293, 306 (7th Cir. 2010) ("In applying the different theories of liability recognized under *Monell*, we have always required plaintiffs to show that their injuries were caused by the policies or practices complained of.").

especially when he offers no specifics"); *Riley v. Dart*, Case No. 15 C 8221, 2018 WL 4563077, at *5 (N.D. Ill. Sept. 24, 2018) ("[I]t is not a given that [the 2008 DOJ Report] represents the state of affairs of the dental care that CCDOC provided in 2014 when [plaintiff] was incarcerated there."). Evans's *Monell* claims against Cook County and Dart are dismissed.

## II. Whether the Complaint Adequately Alleges a Failure-to-Protect Claim Against Mulac and Vega

Mulac and Vega argue that the Complaint does not adequately allege a failure-to-protect claim against them. (*See* Individual Defs.' Mot. to Dismiss at 4–8.) To plead a failure-to-protect claim under the Fourteenth Amendment:

> a pretrial detainee must allege: (1) the defendant made an intentional decision regarding the conditions of the plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's inaction obvious; and (4) the defendant, by not taking such measures, caused the plaintiff's injuries.

*Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022).

According to Mulac and Vega, the Complaint does not sufficiently allege a failure-to-protect claim against them because it lacks allegations showing that they "knew or should have known" of Owens's "suicide risk above a speculative level" but failed to act with reasonable care to mitigate that risk. (*See* Individual Defs.' Mot. to Dismiss at 6–7.) Evans disagrees, arguing that both individuals failed to assign Owens to a psych tier or place him under direct supervision despite knowing that he had attempted suicide on February 28. (Plaintiff's Combined Response in Opposition to Defendants' Motions to Dismiss ("Combined Resp.") (Dkt. No. 37) at 7–8.)

The Complaint sufficiently alleges a claim against Mulac but not against Vega. Evans alleges that Mulac knew Owens had attempted suicide on February 28 because another

8

correctional officer reported the attempt to him via radio. (*See* Compl. ¶ 21.) She continues that Mulac was responsible for "ensuring the safe housing and supervision of inmates." (*Id*. ¶ 35.) Nonetheless, Mulac did not reassign Owens to a "psych tier" or place Owens under direct supervision. (*Id*. ¶ 41.) As a result of this failure, Owens was able to commit suicide. (*Id*. ¶ 42.)

These allegations plausibly suggest that Mulac knew, or had reason to know, that Owens was at risk of committing suicide, and yet did not take reasonable steps to prevent Owens from committing suicide, such as reassigning him to the psych tier or placing Owens under direct supervision. This is all Evans needs to plead at this stage. *See Corbier v. Watson*, Case No. 16-CV-257-SMY-SCW, 2018 WL 4815391, at *3 (S.D. Ill. Oct. 4, 2018) (plaintiff adequately alleged failure-to-protect claim against certain defendants where she pled facts suggesting that defendants knew, or had reason to know, that the decedent was a suicide risk and did not take sufficient steps to protect him from harm). Contrary to Mulac's contention, the fact that correctional officers took Owens to Cermak for a medical and psychological evaluation following his suicide attempt does not require us to dismiss Evans's claim against him. (*See* Individual Defs.' Mot. to Dismiss at 7.) The Complaint does not allege that Mulac played a role in transporting Owens to Cermak. (*See* Compl. ¶ 21.) But even if it did, dismissal would not be appropriate. A plaintiff need not allege that a correctional officer literally did nothing to protect him from harm to maintain a claim; he need only allege that Mulac "did not take reasonable available measures to abate the risk." *See Thomas*, 39 F.4th at 841; *see also Hughes v. Dart*, No. 20 CV 4049, 2021 WL 5795305, at *4 (N.D. Ill. Dec. 7, 2021) (defense that officer's inaction was justified was a "matter[] for another day"—not a question for the motion to dismiss stage). Because Evans has done so, she has adequately pled a claim against Mulac.

We cannot say the same for Evans's claim against Vega. Although the allegations against Vega are similar to the allegations against Mulac, there is a key difference. There are no factual allegations plausibly suggesting that Vega knew, or had reason to know, that Owens was at risk of harming himself before he committed suicide. (*See generally* Compl.) For instance, the Complaint does not allege that Vega witnessed Owens's February 28 suicide attempt or that another officer told him about it. (*See generally id.*) The Complaint states only, in conclusory fashion, that Vega "knew that Mr. Owens attempted suicide on February 28, 2021," and "Vega was aware that there was a strong likelihood that Mr. Owens would seriously harm himself." (*Id.* ¶¶ 47, 49.) We cannot credit conclusory allegations of this type. *See Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 753 (7th Cir. 2021) (observing that though Federal Rule of Civil Procedure 9(b) allows states of mind to be alleged generally, plaintiff could not rely upon conclusory statements to meet the scienter requirements of his cause of action); *Mansoori v. Patel*, No. 17-cv-8846, 2022 WL 683667, at *1, *4 (N.D. Ill. Mar. 8, 2022) (dismissing a pretrial detainee's Fourteenth Amendment claim against a correctional officer for "allow[ing] him to be subjected to degrading treatment by other inmates" where plaintiff did not "include any facts suggesting that [the correctional officer] knew about other inmates' treatment of [him]").

Because Evans has not plausibly alleged that Vega knew about the prior suicide attempt, we are left with the allegations that Vega was a supervisor in the CCDOC division where Owens was housed the day that Owens died (Compl. ¶¶ 26, 46), and that Vega did not assign Owens to a psych tier or place him under direct supervision. (*Id.* ¶ 51.) Such allegations do not plausibly suggest wrongdoing on Vega's part because they lack context plausibly suggesting that a reasonable correctional officer would have acted differently. *See Hughes*, 2021 WL 5795305, at *5 (dismissing claims against supervisors where there were no allegations that they knew

plaintiff needed mental health care prior to self-harm incident at issues or that they turned a blind eye to any purported constitutional deprivations); *Corbier*, 2018 WL 4815391, at *3 (dismissing failure-to-protect claims against certain defendants where plaintiff did not adequately allege that they had knowledge that plaintiff was mentally ill and suicidal). Accordingly, Evans's claim against Vega is dismissed.

## III. Whether Mulac is Entitled to Qualified Immunity

Defendants also argue that Mulac[4] is entitled to qualified immunity. (Individual Defs.' Mot. to Dismiss at 12–13.) "The doctrine of qualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 757, 134 S. Ct. 2056, 2066–67 (2014) (internal quotation marks and citations omitted); *see Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020). Qualified immunity is typically presented as a defense at the summary judgment stage, but it can also be presented in a motion to dismiss. *See Stevens v. Umsted*, 131 F.3d 697, 706 (7th Cir. 1997); *Rusinowski v. Vill. of Hillside*, 835 F. Supp. 2d 641, 650 (N.D. Ill. 2011). However, dismissing a § 1983 suit at the motion to dismiss stage based on qualified immunity "is a delicate matter that district courts should approach carefully." *See Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000).

Mulac argues that he is entitled to qualified immunity because Evans has not sufficiently alleged his "state of mind, intent, or even awareness of any alleged constitutional violations endured by Mr. Owens," and "there was no constitutional violation." (Individual Defs.' Mot. to

---

[4] Defendants also argue that Dart and Vega are entitled to qualified immunity. (*See* Individual Defs.' Mot. to Dismiss at 12–13.) However, we need not address these arguments because we dismiss the claims against Dart and Vega on other grounds.

Dismiss at 12–13.)  Evans responds that Mulac is not entitled to qualified immunity because this case is at the pleading stage, and there is no evidence in the record to support Mulac's position. (Combined Resp. at 8.)

For the reasons discussed above, Evans has alleged facts that plausibly suggest that Mulac violated Owens's constitutional right.  As for whether that right was clearly established, courts have consistently concluded that correctional officers must take reasonable steps to protect detainees from self-harm where, as here, they have reason to believe that the detainees might harm themselves.  *See, e.g., Miranda v. Cnty. of Lake*, 900 F.3d 335, 349 (7th Cir. 2018) ("We repeatedly have recognized a jail or prison official's failure to protect an inmate from self-harm as one way of establishing deliberate indifference to a serious medical need. . . . The obligation to intervene covers self-destructive behaviors up to and including suicide.") (internal citations omitted); *Est. of Miller ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 991 (7th Cir. 2012) (concluding that the right to be free from deliberate indifference to suicide "was clearly established in 2009 as it was in 1998") (internal quotation marks and citations omitted).  Accordingly, qualified immunity does not warrant dismissing Evans's claims against Mulac at this stage of the litigation.

## IV.  Whether the Claim Against the "Unknown Officer" Should Be Dismissed

Finally, Defendants argue that Evans's claims against an "Unknown Officer" should be dismissed for two reasons.[5]  First, they argue that Evans has failed to allege sufficient facts to state a claim against the "Unknown Officer."  (*See* Individual Defs.' Mot. to Dismiss at 6.)  Second, they argue that the claim should be dismissed because Evans has had time since filing the Complaint to determine the identity of the "Unknown Officer" through FOIA requests or

---

[5] Defendants have not moved to dismiss the claims against the "Unknown Doctor."  (*See* Individual Defs.' Mot. to Dismiss; Cook County's Mot. to Dismiss.)

subpoenas and has not done so. (*Id*. at 14–15.) Defendants claim that plaintiffs are usually only allowed to proceed against unnamed defendants when they are proceeding *pro se*, which is not the case here. (*Id*. at 14.)

Evans did not respond to these arguments (*see generally* Combined Resp.), so she has waived any arguments to the contrary. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Wilcosky v. Amazon.com, Inc.*, 517 F. Supp. 3d 751, 767 (N.D. Ill. 2021) (the plaintiff's failure to address defendants' argument constituted a concession on the point). But even if that had not been the case, it would be proper to dismiss Evans's claim against the "Unknown Officer" because she has not plausibly alleged that the "Unknown Officer" engaged in any wrongdoing. Evans alleges that the "Unknown Officer" was responsible for "ensuring the safe housing and supervision of inmates" and had reason to suspect that Owens might harm himself because on March 3, "another inmate informed [the Unknown Officer] that Mr. Owens was going to commit suicide." (Compl. ¶¶ 54, 57.) However, Evans does not specify how the "Unknown Officer" went wrong, alleging only "Defendant failed to take reasonable measures to prevent Mr. Owens from committing suicide." (*Id*. ¶ 59.) Because Evans has not alleged facts from which we can reasonably infer the "reasonable measures" that "the Unknown Officer" should have taken but did not, her claim against the Unknown Officer is also dismissed. *See Hughes*, 2021 WL 5795305, at *4 (dismissing claim against a defendant where plaintiff alleged that the defendant "failed to take sufficient action to intervene" but did not "plead facts showing that [the defendant's] behavior was objectively unreasonable and amounted to a constitutional deprivation") (internal quotation marks and citations omitted).

## CONCLUSION

For the reasons set forth above, we grant Cook County's Motion (Dkt. No. 32) and grant Individual Defendants' Motion (Dkt. No. 29) in part and deny it in part. The claims against Cook County, Dart, Vega, and the Unknown Officer are dismissed. The claim against Mulac is not. Evans shall have until September 16, 2022, to file an amended complaint if she can do so in accordance with this Opinion and Federal Rule of Civil Procedure 11. It is so ordered.

Honorable Marvin E. Aspen
United States District Judge

Dated: August 26, 2022
      Chicago, Illinois